UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ANTHONY G. TAYLOR,  )<br>    Plaintiff,  )<br>                      )<br>v.  )<br>                      )<br>J P MORGAN CHASE, CAHSE HOME  )<br>FINANCE,  )<br>    Defendant.  ) | CAUSE NO.: 4:16-CV-52-RL-JEM |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [DE 37], Plaintiff's Motion for Judgment on the Pleadings [DE 46] and a Motion to Amend Complaint [DE 38].

On May 30, 2017, District Judge Rudy Lozano entered an Order [DE 60] referring the instant Motions for Judgment on the Pleadings to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C) on both Motions for Judgment on the Pleadings.

The Motion to Amend Complaint is not subject to the Order of Referral.

**I.     Background**

On June 8, 2016, Plaintiff Anthony G. Taylor, proceeding *pro se*, filed his initial Complaint in state court, alleging breach of contract and breach of the duty of good faith and fair dealing, as well as a claim for promissory estoppel. Defendant JPMorgan Chase, Bank, N.A., incorrectly sued as J P Morgan Chase and Cahse Home Finance, removed the case to this Court on July 5, 2016. Taylor now seeks to add claims for intentional and negligent infliction of mental and emotional

distress and fraudulent misrepresentation, as well as adding allegations to his existing claims. Chase objects on the grounds that the proposed Amended Complaint is futile. Chase also requests judgment on the pleadings on the grounds that Taylor's claims fail as a matter of law. Taylor requests that the Court declare that this case is governed by a ten year statute of limitations.

Taylor alleges that Chase contacted him and invited him to apply for modification of his home mortgage pursuant to the Home Affordable Modification Program ("HAMP"). Taylor alleges that the Chase representative verbally offered him a HAMP Trial Period Plan ("TPP") for three months, and that Chase subsequently sent Taylor a letter on approximately August 20, 2009, laying out the terms of the TPP. The letter, attached to the Complaint, states that the recipient "may qualify for a Home Affordable Modification Trial Period Plan" and provides a series of steps for the recipient to complete, so that "[i]f you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." [DE 2]. In the first question of the Frequently Asked Questions section, the letter states, "It may take up to 30 days for us to receive and review your documents. We will process your modification request as quickly as possible. Please note, however, that your modification will not be effective unless you meet all of the applicable conditions, including making all trial period payments." Attached to the letter is a document to be signed by the borrower, titled Home Affordable Modification Trial Period Plan (Step One of Two-Step Documentation Process). It lays out the terms agreed to by the borrower, in this case Taylor. It states:

> If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my

>representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me.

Taylor alleges that he completed the required paperwork and provided Chase with the requested documentation, including tax forms and agreements, and that he continued to comply with requests for additional documents and methods of payments during the three month trial period. He alleges that Chase did not return an executed copy of Taylor's TPP agreement or an explanation of ineligibility before the expiration of the trial period, let alone within thirty days of the submissions of his HAMP application. Taylor alleges that he qualified for permanent modification under the terms of HAMP, but that Chase eventually denied his request permanent modification. Taylor alleges that as the result of Chase's actions, his credit score was damaged, he was unable to refinance his property and did not have late charges removed from his account.

On January 4, 2017, Chase filed a Motion for Judgment on the Pleadings. Taylor filed the instant Motion to Amend Complaint on January 10, 2017. Chase responded on January 24, 2017, and Taylor filed a reply on January 31, 2017. On January 27, 2017, Taylor filed his own Motion for Judgment on the Pleadings, with a combined brief in support of his own motion and in response to Chase's. On February 3, 2017, Chase filed its reply to its Motion for Judgment on the Pleadings and response to Taylor's motion, and Taylor filed a reply in support of his motion on February 10, 2017.

**II.   Standard of Review**

A party may amend a pleading with the Court's leave, and the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny a motion to amend lies within the Court's sound discretion, but leave to amend is "inappropriate where there is

3

undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991); *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). An amendment is futile if the new claims "could not withstand a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted." *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is evaluated by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004)). When addressing a motion for judgment on the pleadings, the Court must "view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal quotations omitted). When ruling on a 12(c) motion, the Court considers only the pleadings, which "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows,* 163 F.3d at 452.

Taylor's allegations were drafted *pro se*, without the assistance of an attorney, and therefore are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

4

**III.     Analysis**

Chase argues that it is entitled to judgment on the pleadings as to Taylor's current Complaint because his claims fail as a matter of law, and that his proposed Amended Complaint is likewise futile. Taylor requests that the Court grant judgment in his favor against Chase's affirmative defense that his claims are barred by the applicable statute of limitations. The Court considers whether Taylor has stated a claim for relief in each of his claims in the Complaint and the proposed Amended Complaint.

      A.     Breach of Contract

Chase argues that Taylor's claim for breach of contract is futile, both as originally pled and in the proposed amendment, because it fails to plead the necessary elements of a breach of contract claim. Under Indiana law, "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007).

Chase argues that Taylor does not plead facts that establish a contract between the parties. Taylor alleges that he was contacted by Chase's representative about the TPP and that Taylor verbally accepted the offer, then completed copies of the TPP paperwork and made payments as requested. Taylor alleges that he did everything that Chase asked him to do, and that he was entitled to a modification but did not get one. He also argues that Chase agreed to send him an executed copy of the trial period plan within thirty days of September 3, 2009, the date of his initial paperwork submission, but that Chase did not confirm receipt of his documents until January 14, 2010, after the expiration of the trial period and what would have been the modification effective date of December 1, 2009.

5

Chase argues that the TPP terms as laid out in the August 20, 2009, letter to Taylor are conditional at best, not an offer, and Taylor's completion of the application paperwork in no way formed a contract. Instead, Chase argues, an enforceable contract would only be formed when Chase signed the modification agreement and returned it to Taylor, but it did not do so because it determined that Taylor did not meet the terms of HAMP.

As Chase argues, the TPP Agreement did not, itself, create a contract. Chase promised that if Taylor provided the requested paperwork along with making timely payments and if Chase determined that Taylor qualified under HAMP, then Chase would modify his mortgage. The language throughout the letter is conditional, with phrases like "IF we are able to modify your loan," and warnings that "[y]ou may not qualify for this load modification program." Similarly, the portion of the TPP document signed by Taylor states: "If prior to the Modification Effective Date . . . the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement[,] . . . the Loan Documents will not be modified and this Plan will terminate." *See, e.g., Baehl v. Bank of Am., N.A.*, No. 3:12-CV-00029-RLY, 2013 WL 1319635, at *11 (S.D. Ind. Mar. 29, 2013) ("[C]onditional language throughout the TPP . . . clearly shows that [the bank] did not manifest a willingness to enter a bargain with Plaintiffs. First, the letter introducing the HAMP program illustrates that acceptance into the program is not automatic. . . . Next, the language in the TPP repeatedly states the conditional status of the offer. . . . Taken together, the language of the TPP is clear that the TPP was not an offer by [the bank] to Plaintiffs which Plaintiffs could accept by simply providing further documentation. Instead, it was an invitation for Plaintiffs to apply to the program."). This case is unlike that of *Wigood v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). In that case, the Seventh Circuit Court of Appeals held that the plaintiff stated a claim for

6

breach of contract in a similar HAMP case where the bank countersigned the TPP Agreement "and mailed a copy to [the plaintiff] with a letter congratulating her on her approval for a trial modification." *Id.* at 562. The Seventh Circuit found that "[i]n so doing, [the bank] communicated to [the plaintiff] that she qualified for HAMP and would receive a permanent 'Loan Modification Agreement' after the trial period" if she remained in compliance with the other requirements. *Id.* It reasoned that "when [the bank] executed the TPP, its terms included a unilateral offer to modify [the plaintiff]'s loan conditioned on her compliance with the stated terms of the bargain." *Id.* No such offer was made by Chase to Taylor; Chase never returned an executed copy of the TPP, and Taylor's signature on the TPP letter did not bind Chase to its terms.

The TPP document also does not specify the timing of the modification decision. In the Frequently Asked Questions section, the letter states, "It may take up to 30 days for us to receive and review your documents. We will process your modification request as quickly as possible. Please note, however, that your modification will not be effective unless you meet all of the applicable conditions." It does not promise a decision within thirty days or even that Taylor would receive any documents relating to the decision prior to the Modification Effective Date.

Accordingly, Taylor cannot establish the require elements of a breach of contract claim so amendment would be futile and judgment is appropriate in favor of Chase.

      B.     Good Faith and Fair Dealing

Chase argues that Taylor's claim for breach of the implied covenant of good faith and fair dealing is futile because in Indiana law, there is no separate cause of action for breach of good faith and fair dealing in a contract action. Taylor argues that "there is an implied covenant of good faith and fair dealing in all contracts in Indiana."

7

"The duty of good faith and fair dealing is a concept created by the Uniform Commercial Code and restricted to contracts for the sale of goods and is also a concept which [Indiana] courts have expanded to insurance contracts as a cause of action sounding in tort." *Amaya v. Brater*, 981 N.E.2d 1235, 1239 (Ind. Ct. App. 2013); *see also Perfect Flowers, Inc. v. Teleflora LLC*, No. 1:10-CV-1031-SEB-TAB, 2012 WL 2994636, at *3 (S.D. Ind. July 20, 2012) ("An obligation of good faith is imposed only in limited circumstances, such as when a fiduciary duty exists or on those transactions subject to the Uniform Commercial Code as codified at Indiana Code § 26-1-1-203. There is no fiduciary relationship here and the contract at issue . . . is not governed by Indiana's Uniform Commercial Code. Accordingly, Plaintiff's claim that Defendant breached its duty of good faith and fair dealing in its performance under the contract must fail as no such duty existed under Indiana law.").

There is no separate cause of action in this case for breach of an implied covenant of good faith and fair dealing: the alleged contract is not for sale of goods governed by the Uniform Commercial Code, it does not involve a contract for insurance, and no fiduciary or other special relationship is created by a mortgage. *Baehl*, 2013 WL 1319635, at *9; *see also Ray Skillman Oldsmobile & GMC Truck, Inc. v. Gen. Motors Corp.*, No. 1:05-CV-0204-DFH-WTL, 2006 WL 694561, at *6 (S.D. Ind. Mar. 14, 2006) ("Neither Indiana nor Michigan recognizes an independent tort action for breach of an implied contractual covenant of good faith."). Accordingly, Chase is entitled to judgment on the pleadings on Taylor's Complaint, and Taylor's proposed amendment adding a claim for breaching the implied covenant of good faith and fair dealing is futile.

C.      Intentional Infliction of Emotional Distress

Taylor also proposes a claim for intentional infliction of emotional distress. Chase argues

that this claim would be futile and his request to add it should be denied.

To recover on a claim for intentional infliction of emotional distress, Taylor must prove that Chase "(1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009) (quotation omitted). In Indiana, the proof requirements for an IIED claim are "rigorous." *Rhoades v. Penn-Harris-Madison Sch. Corp.*, 574 F. Supp. 2d 888, 908 (N.D. Ind. 2008) (citing *Branham v. Celadon Trucking Servs.*, 744 N.E.2d 514, 523 (Ind. Ct. App. 2001)). The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious and utterly intolerable in a civilized community." *Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996).

In this case, Taylor alleges that Chase knowingly frustrated his attempts to obtain a HAMP loan modification, causing him to suffer distress when he was unable to refinance his home and it was placed under a judgment of foreclosure, but this mishandling, albeit stressful and unfortunate, does not rise to the level of being atrocious and utterly intolerable. *See Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 640 (Ind. Ct. App. 2015) ("Even if everything occurred that [the plaintiff] alleges – that [the bank] intentionally mishandled her HAMP applications and thereby caused her emotional distress – such facts would not establish an IIED claim. The unfortunate fact is that losing one's job and then facing foreclosure is stressful no matter the circumstances. Before HAMP was enacted, [the plaintiff]'s options for remaining in her home would have been even more limited than with the program in place. We are hard-pressed to say that any mishandling of this new program – even if intentional – constitutes the type of beyond-the-pale, 'outrageous' conduct that may be covered by an IIED claim."). Taylor's proposed claim for intentional infliction of emotional

9

distress is futile.

Similarly, Chase argues that Taylor's damages are only economic, and therefore cannot undergird a claim for negligent inflection of emotional distress, to the extent he wishes to incorporate one. Although in Indiana a claim for negligent infliction of emotional distress has expanded to cover emotional trauma other than that which is the results of a direct physical impact, Indiana Courts "have generally refused to allow these damages where there has been only an economic loss." *Ketchmark v. N. Ind. Pub. Serv. Co.*, 818 N.E.2d 522, 524 (Ind. Ct. App. 2004); *see also Lachenman v. Stice*, 838 N.E.2d 451, 461 (Ind. Ct. App. 2005). To the extent Taylor is seeking to add a claim for negligent infliction of emotional distress, it is also futile.

### D. Fraudulent Misrepresentation

Taylor seeks leave to add a claim for fraudulent misrepresentation, alleging that Chase is liable to Taylor due to its purposed improper acts in connection with the independent foreclosure review process. Taylor's proposed Amended Complaint alleges that Chase "provided false information to the independent review administrator to defraud the Taylor of the compensation that he was entitled to" based on a compensation table established by the Federal Reserve in a consent order between Chase and the Comptroller of the Currency of the United States of America. Chase argues that Taylor has failed to sufficiently plead a cause of action for fraudulent misrepresentation and that the Court does not have jurisdiction over any claims arising out of the consent order he refers to in his proposed Amended Complaint.

A cause of action for fraudulent misrepresentation in Indiana requires the defendant to knowingly or recklessly make false statements of fact to induce the plaintiff to act on those false statements. *Breeden Revocable Trust v. Hoffmeister-Repp*, 941 N.E.2d 1045, 1053 (Ind. Ct. App.

10

2010). Taylor's proposed claim is that Chase gave incorrect information about Taylor's mortgage payment to income ratio to an independent foreclosure administrator. Giving false information to a third party does not create a cause of action for fraudulent misrepresentation in Indiana.

Construing Taylor's claims liberally, it appears that he may be attempting to hold Chase accountable for failing to comply with the terms of a 2011 consent order entered into by Chase and the Comptroller of the Currency of the United States of America regarding residential real estate mortgage foreclosure proceedings. The Consent Order, and the 2013 amendment thereto, provide, "Nothing in the Stipulation or this Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." [DE 45-2]. As Chase argues, the Court lacks jurisdiction over the consent order referred to by Taylor, and there is no third party right to enforce it. *See* 12 U.S.C. § 1818(i)(1) ("except as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order"). Other courts have agreed. *See, e.g., Conant v. Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 117 (D.D.C. 2014) ("Reviewing this language and identical language in other OCC consent orders, other courts have concluded that homeowners lack the ability to sue for enforcement of such consent orders.") (listing cases); *Kaur v. Comptroller of Currency*, No. 2:14-CV-0875 KJM DAD, 2014 WL 5473538, at *3 (E.D. Cal. Oct. 28, 2014) ("However, the consent orders placed at issue by plaintiffs' allegations do not provide them with a private right of action to enforce the terms and conditions of those consent orders.") (listing cases).

11

Accordingly, adding a claim that seeks to enforce the terms of the 2011 Consent Order and its 2013 Amendment would be futile, and Plaintiff's proposed Amended Complaint fails to state a claim for fraudulent misrepresentation.

E.  Promissory Estoppel

Chase argues that Taylor has failed to sufficiently state a claim for promissory estoppel and it is entitled to judgment on the pleadings as to that claim. Taylor argues that he has sufficiently stated a claim for promissory estoppel as an alternate theory of recovery.

In Indiana, a successful claim for promissory estoppel has five elements: "(1) a promise; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcing the promise." *Zusy v. Int'l Med. Grp., Inc.*, 500 F. Supp. 2d 1087, 1097 (S.D. Ind. 2007) (citing *Truck City of Gary, Inc. v. Schneider Nat'l Leasing*, 814 N.E.2d 273, 279 (Ind. Ct. App. 2004)). Chase argues that the TPP was a conditional plan that cannot be relied upon to establish a promise, and that neither Taylor's Complaint nor proposed Amended Complaint include any factual claims that Chase expected Taylor to rely on the alleged promise or that Chase's promise was of a definite and substantial nature. Chase also argues that Taylor does not allege that he reasonably relied on the alleged promise by Chase.

Taylor alleges that in reliance on Chase's conditional promise to modify his mortgage if he met the requirements, he completed paperwork, including giving tax information to Chase, and suffered "financial harm" as a result. In order "to establish that injustice can be avoided only through enforcement of [a] promise," the party seeking to recover on a theory of promissory estoppel "must show their reliance injury is 1) independent from the benefit of the bargain and the resulting

12

expenses and inconvenience; and 2) so substantial as to constitute an unjust and unconscionable injury." *Spring Hill Dev., Inc. v. Arthur*, 879 N.E.2d 1095, 1103 (Ind. Ct. App. 2008). In this case, even assuming that Chase agreed to modify Taylor's mortgage within thirty days of his signing the initial letter, the only reliance injury he suffered was his inability to seek other loan modification options while he was waiting. The incidental expenses and inconvenience he suffered between the end of September and beginning of January is not "so substantial and independent as to constitute an unjust and unconscionable injury and loss." *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). Accordingly, Taylor has failed to state a claim for promissory estoppel, and the claim as laid out in his proposed amended complaint is futile.

### F. Statute of Limitations

The parties disagree as to what statute of limitations should apply to the breach of contract and promissory estoppel claims. However, as described above, Taylor has not stated a claim for breach of contract or promissory estoppel, and amendment of these claims would be futile. Accordingly, the question of whether he brought his claims within the applicable statute of limitations is moot.

## III. Conclusion

For the foregoing reasons, the Court hereby **DENIES** the Motion to Amend Complaint [DE 38]. The Court **RECOMMENDS that the District Court GRANT** Defendant's Motion for Judgment on the Pleadings [DE 37] and **DENY as moot** Plaintiff's Motion for Judgment on the Pleadings [DE 46].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with

a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 30th day of June, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record
Plaintiff, *pro se*

14