# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION AT LAFAYETTE

ANTHONY G. TAYLOR,       )
                                )

Plaintiff,            )
                                )

vs.                        )   CAUSE NO. 4:16-CV-52
                                )

JP MORGAN CHASE, CHASE HOME   )
FINANCE,                 )
                                )

Defendant.            )

## OPINION AND ORDER

This matter is before the Court on the: (1) Report and Recommendations of Magistrate Judge John E. Martin, filed on June 30, 2017 (DE #67); and (2) the Plaintiff's Objection to Magistrate's Findings, Report and Recommendation, filed by pro se Plaintiff, Anthony G. Taylor, on July 14, 2017 (DE #68). For the reasons set forth below, the objection (DE #68) is **OVERRULED** and the report and recommendation (DE #67) is **ADOPTED**. Accordingly, Defendant's Motion for Judgment on the Pleadings, filed by Defendant, JPMorgan Chase Bank, N.A., on January 4, 2017 (DE #37), is **GRANTED**, and the Clerk is **ORDERED** to **DISMISS** all claims against Defendant, Chase, **WITH PREJUDICE**. Plaintiff's Motion for Judgment on the Pleadings, filed by pro se Plaintiff, Anthony G. Taylor, on January 27, 2017 (DE #46), is **DENIED AS MOOT**.

<u>BACKGROUND</u>

On May 30, 2017, this Court referred Defendant's motion for judgment on the pleadings (DE #37) and Plaintiff's motion for judgment on the pleadings (DE #46) to Magistrate Judge John Martin for report and recommendation. (DE #60.)

On June 30, 2017, Magistrate Judge John Martin issued a Report and Recommendation. (DE #67.) First, Judge Martin denied Plaintiff's motion to amend the complaint (DE #38). Judge Martin also ruled upon Defendant's motion for judgment on the pleadings (DE #37), finding that Taylor's claims fail as a matter of law and Chase was entitled to judgment on the pleadings. (DE #67.) Finally, Judge Martin ruled on Plaintiff's motion for judgment on the pleadings (DE #46), recommending it should be denied as moot because Defendant's motion for judgment on the pleadings was successful. (DE #67.) The facts of the case are fully set forth in Judge Martin's opinion.

Plaintiff filed a timely objection to the Magistrate Judge's rulings on July 14, 2017 (DE #68), and Chase filed a response on July 27, 2017 (DE #69). As such, this matter if fully briefed and ripe for adjudication.

<u>DISCUSSION</u>

This Court's review of the Magistrate Judge's Report and Recommendation is governed by 28 U.S.C. § 636(b)(1)(C). When a

party makes objections to a magistrate judge's recommendations, "[t]he district court is required to conduct a de novo determination of those portions of the magistrate judge's report and recommendations to which objections have been filed." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b).

First, Plaintiff argues that the Magistrate Judge misapplied the standard of review for the judgment on the pleadings. (DE #68 at 3.) To the contrary, the Magistrate Judge properly evaluated the motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

A motion for judgment on the pleadings under Rule 12(c) "is reviewed under the same standard as a motion to dismiss under 12(b); the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989). In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662

(2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, the court must bear in mind that a *pro se* complaint is entitled to liberal construction, "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Just because Plaintiff included 77 allegations in his complaint does not mean that he has properly pled the parties had an agreement. (DE #68 at 4.) Indeed, the Magistrate Judge analyzed in detail the breach of contract claim and properly determined that no contract existed because, *inter alia*, no offer was made by Chase to Taylor; Chase never returned an executed copy of the TPP, and Taylor's signature on the TPP letter did not bind Chase to its terms. (DE #67 at 5-7.) As such, the Magistrate Judge properly found that Plaintiff could not establish the elements of a breach of contract claim.

Second, Plaintiff contends the Magistrate Judge misapplied the

rationale and holding in *Baehl v. Bank of America, N.A.*, 3:12-cv-00029-RLY-WGH, 2013 WL 1319635 (S.D. Ind. Mar. 29, 2013). (DE #68 at 6.) To the contrary, *Baehl* is directly on point. In that case, like here, the plaintiffs executed and returned a TPP to the bank. *Id.* at *2-3. When the *Baehl* plaintiffs did not obtain a permanent loan modification, they sued the bank for, among other claims, breach of contract. *Id.* at *11. In dismissing the breach of contract claim, the *Baehl* court held that the TPP was not an enforceable contract, because the:

> language of the TPP is clear that the TPP was not an offer by [the bank] to Plaintiffs which Plaintiffs could accept simply by providing further documentation. Instead, it was an invitation for Plaintiffs to apply to the program, which required Plaintiffs' compliance to be considered for the program.

*Id.* at *12.

Taylor claims *Baehl* is factually distinguishable because the plaintiffs in that case never provided all of the required paperwork to the bank. While the complaint in this case alleges that Taylor did submit, repeatedly, all of the necessary documents, the complaint also includes assertions that Chase sent Taylor letters on October 3, 2009, October 9, 2009, and December 3, 2009, informing Taylor that his application was at risk because he had not submitted the required documents. (DE #2 at ¶¶ 27, 28, 30.) The Court in *Baehl* reasoned that the plaintiff's reliance on *Wigod* was misplaced because:

5

> Although the same loan language is present in the
> modification here, a critical distinction exists –
> the servicer in *Wigod* countersigned the Plan and
> mailed a copy back to the borrower with a letter
> congratulating her on her approval for a trial
> modification. *Wigod*, 673 F.3d at 562. The Court
> further explained that these actions "communicated
> to [the borrower] that she qualified for HAMP and
> would receive a permanent 'Loan Modification
> Agreement' after the trial period," provided she
> met the listed conditions. *Id.*

*Baehl*, 2013 WL 1319635, at *12. The *Baehl* court went on to find
that because the bank found the plaintiffs failed to provide
sufficient documentation necessary to complete the modification
review, and denied the application, "no contract was formed." *Id.*
at *13. Taking Plaintiff's allegations as true, as the Court must
at this stage of the proceedings, that he did provide all of the
necessary documentation, the Magistrate Judge still properly found
that there was no enforceable contract as "Chase never returned an
executed copy of the TPP, and Taylor's signature on the TPP letter
did not bind Chase to its terms." (DE #67 at 7.)

In this case, like in *Baehl*, the language of the TPP is clear
that it is not an offer that Taylor could have accepted simply by
providing further documentation. Moreover, the conditional
language in the TPP that "if you qualify under the federal
government's Home Affordable modification program and comply with
the terms of the Trial Period Plan, we will modify your mortgage
loan and you can avoid foreclosure" (DE #2 at 14) and "[i]f prior
to the Modification Effective date, (i) the Lender does not provide

me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate" (DE #2 at 20) and "the Trial Period Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement . . . " (DE #2 at 16) shows, like in *Baehl*, that the TPP was not an offer that Plaintiff could accept simply by providing further documentation.

Taylor also contends the Magistrate failed to follow controlling precedent in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 563 (7th Cir. 2012). (DE #68 at 7-9.) The Magistrate Judge did address this case in his opinion, noting it was dissimilar because in *Wigod*, the court found there was a breach of contract claim where the bank countersigned the TPP Agreement and mailed a copy back to the Plaintiff "with a letter congratulating her on her approval for a trial modification. In so doing, [the bank] communicated to Wigod that she qualified for HAMP and would receive a permanent 'Loan Modification Agreement' after the trial period." *Wigod*, 673 F.3d at 562. In contrast, here, Plaintiff does not allege that Chase ever returned a countersigned TPP to Plaintiff.

The Court in *Golbeck v. Johnson Blumberg & Assocs., LLC.*, No. 16-cv-6788, 2017 WL 3070868, at *7 (N.D. Ill. July 19, 2017) (citations omitted), recently similarly distinguished *Wigod*:

> But *Wigod* is no help to Plaintiff because the defendant in *Wigod* "countersigned" the trial payment plan "and mailed a copy to [plaintiff] with a letter congratulating her on her approval for a trial modification." *Wigod*, 673 F.3d at 562. The Seventh Circuit explained that "when [defendant] executed the [trial period plan or 'TPP'], its terms included a unilateral offer to modify [plaintiff's] loan conditioned on her compliance with the stated terms of the bargain." *Id*. Thus, it was the lender's signature that made the TPP a binding offer that could be accepted through performance. That is because "when the promisor conditions a promise on *his own* future action or approval, there is no binding offer," but "when the promise is conditioned on the performance of some act *by the promisee* or a third party, there can be a valid offer." *Id.* at 561.

In finding no contract was formed in that case where the bank did not sign the contract and return it, the *Golbeck* court went on to note that other courts around the country are in accord. *See, e.g.*, *Pennington v. HSBC Bank USA, N.A.*, 493 Fed. Appx. 548, 554 (5th Cir. 2012) ("[Plaintiff's] contract contained the . . . language . . . that the TPP does not take effect until the borrower and the lender sign it and the lender provides the borrower a signed copy. . . . [Plaintiffs'] made regular TPP payments, but they neither produced such a signed contract nor allege such a signed contract exists. . . . The complaint therefore does not demonstrate that the [Plaintiffs'] TPP ever took effect, so there

could be no contract for the bank to breach."); *McGann v. PNC Bank, Nat. Ass'n*, No. 11-cv-06894, 2013 WL 1337204, at *6 (N.D. Ill. Mar. 29, 2013) ("Here, the plain language of the TPP Agreement states [defendant] is not obligated to provide a HAMP loan modification until both parties execute the TPP Agreement . . . Pursuant to the TPP Agreement's own terms, [defendant's] failure to sign the agreement evidences that it had no obligation to offer [plaintiff] a HAMP loan modification."); *Avevedo v. CitiMortgage, Inc.*, No. 11 C 4877, 2012 WL 3134222, at *8 (N.D. Ill. July 25, 2012) ("The court agrees with [defendant] that the fact that it did not execute the TTP associated with the plaintiffs' loan and return that document to them is fatal to the plaintiffs' breach of contract claim."); *Rummell v. Vantium Capital, Inc.*, No. 12-10952, 2012 WL 2564846, at *6 (E.D. Mich. July 2, 2012) ("[T]he TPP is only a proposal, and it does not create a binding contract when only one party has signed it."); *Lonberg v. Freddie Mac*, 776 F.Supp.2d 1202, 1209 (D. Or. 2011) ("[E]very court that has reviewed this issue has unanimously agreed that a defendant's failure to provide a permanent loan modification solely on the basis of the existence of a TPP does not sufficiently state a breach of contract claim.").

This Court concurs with the logic in *Golbeck* and the cases cited therein, finding that because Chase was required to execute the TPP but did not, no contract was formed. Therefore, there is no viable breach of contract claim. *See, e.g., Senter v. JPMorgan*

*Chase Bank, N.A.*, 810 F.Supp.2d 1339, 1357 (S.D. Fla. 2011) (holding "the TPP Agreements are not agreements to provide the Plaintiffs with a loan at a specified date, but rather, an agreement governing obligations of both the Plaintiffs and the Defendants over a trial period after which the Defendants may extend a separate permanent loan modification should they determine that the Plaintiffs qualify."); *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10 cv 670-HEH, 2011 WL 1306311, at *5 (E.D. Va. Apr. 1, 2011).

While it is true that the dicta in *Wigod* states that a reading that the obligation to send a permanent Modification Agreement only if and when it actually sent one would render the agreement illusory, it also noted that a more natural interpretation would be to read it that the bank had an "obligation to *offer* Wigod a permanent modification once she satisfied all her obligations under the agreement." *Wigod*, 673 F.3d at 563 (emphasis in original). In that case, "[o]nce [the bank] signed the TPP Agreement and returned it to Wigod, an objectively reasonable person would construe it as an offer to provide a permanent modification agreement if she fulfilled its conditions." *Id.* In this case, because Chase never signed and returned the agreement, there was no offer, and no contract was ever created.

Next, Taylor contends the Magistrate Judge's finding "that Chase did not agree to a timely decision is erroneous and contrary"

to law.  (DE #68 at 10-12.)  However, the Magistrate Judge properly determined that the express language of the TPP document does not specify the exact timing of the modification decision.  (DE #67 at 7.) The TPP provides that, "[i]t may take up to 30 days for us to receive and review your documents.  We will process your modification request as quickly as possible.  Please note, however, that your modification will not be effective unless you meet all of the applicable conditions." *Id.*  The TPP does not promise a decision within 30 days, or that Taylor would receive any documents relating to the decision prior to the Modification Effective Date. As such, this case is different than *Wigod*, where a counter-signed TPP was returned to Plaintiff, and it is also factually distinguishable from the other non-controlling cases from other circuits cited by Taylor.  *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 228-35 (1st Cir. 2013) (holding mortgagor stated a claim under Massachusetts contract law where Plaintiff was incorrectly sent a denial letter, then eventually received a permanent loan modification, but for a higher payment); *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 882 (9th Cir. 2013) (the bank never told the plaintiffs they were ineligible for a modification), *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780 (4th Dist. 2013) (the defendant agreed there was a contract and the only issue was whether it was breached).  In contrast, in this case, the parties dispute whether a contract was made, and Chase did ultimately tell

Taylor he did not satisfy the income requirements for a HAMP loan modification, resulting in a denial of his modification request. (DE #34-5.)

Taylor also argues that the Magistrate Judge's finding that he failed to state a claim for breach of the implied covenant of good faith and fair dealing is erroneous. (DE #68 at 12-13.) However, Taylor does not contest the well settled law cited by Magistrate Judge Martin that there is no separate cause of action in this case for breach of an implied covenant of good faith and fair dealing: the alleged contract is not for sale of goods, governed by the Uniform Commercial Code, it does not involve a contract for insurance, and no fiduciary or other special relationship is created by a mortgage. *Baehl*, 2013 WL 1319635, at *9; *see also Ray Skillman Oldsmobile & GMC Truck, Inc. v. Gen. Motors Corp.*, No. 1:05-CV-0204-DFH-WTL, 2006 WL 694561, at *6 (S.D. Ind. Mar. 14, 2006) ("Neither Indiana nor Michigan recognizes an independent tort action for breach of an implied contractual covenant of good faith."). Taylor's insistence that he included allegations in his complaint in paragraphs 20-32 to allege this cause of action (DE #68 at 13) does not save these claims as they are not recognized as an independent tort.

Taylor next contends the Magistrate Judge's finding that "Chase only mishandled the HAMP process is erroneous." (DE #67 at 9; DE #68 at 13.) This misconstrues the Magistrate Judge's proper

finding, which was in finding the proposed amendment futile for intentional and negligent infliction of emotional distress, he noted that even if Chase had mishandled the process, that would still not give rise to the necessary level of being atrocious and utterly intolerable for these claims. *See Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 640 (Ind. Ct. App. 2015).

Finally, Taylor argues the Magistrate Judge's finding is erroneous in recommending the denial of Plaintiff's motion for judgment on the pleadings as moot. (DE #68 at 14.) The parties disagree as to what statute of limitations is applicable for the breach of contract and promissory estoppel claims. However, because the Magistrate Judge properly found that Taylor has not stated a claim for breach of contract or promissory estoppel, and amendment of the claims would be futile, the questions of whether Taylor brought his claims within the applicable statute of limitations is moot.


CONCLUSION

For the reasons set forth below, the objection (DE #68) is **OVERRULED** and the report and recommendation (DE #67) is **ADOPTED**. Accordingly, Defendant's Motion for Judgment on the Pleadings, filed by Defendant, JPMorgan Chase Bank, N.A., on January 4, 2017 (DE #37), is **GRANTED**, and the Clerk is **ORDERED** to **DISMISS** all claims against Defendant, Chase, **WITH PREJUDICE.** Plaintiff's

Motion for Judgment on the Pleadings, filed by pro se Plaintiff,

Anthony G. Taylor, on January 27, 2017 (DE #46), is **DENIED AS MOOT.**


**DATED: August 30, 2017**          **/s/ RUDY LOZANO, Judge**
                                     **United States District Court**